UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

KEITH W.R. LOWE,

        Plaintiff,

v.                                          Case No. 2:13-cv-22416

CAPTAIN R. MATHENY,
SGT. HILL, OFFICER ELLIOTT,
SGT. HILEWITZ, CORPORAL FERNANDEZ,
C.O. JOHN DOE,
(all in their individual capacities), and
WARDEN DAVID BALLARD,
PAUL PARRY, Associate Warden Security,
COMMISSIONER JIM RUBENSTEIN,
THE USE OF FORCE REVIEW BOARD,
KATHY DILLIAN, Paralegal of MOCC,
BRANDON ARMSTRONG, Grievance Coordinator,
RALPH TERRY, Deputy Warden,
(all in their individual and official capacities),

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

        This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are two Motions for Preliminary Injunction filed by the plaintiff (ECF Nos. 8 and 17). For the reasons stated herein, it is respectfully **RECOMMENDED** that the plaintiff's Motions for Preliminary Injunction (ECF Nos. 8 and 17) be **DENIED**.

## **PROCEDURAL HISTORY**

On August 29, 2013, the plaintiff filed a Complaint for Injunctive and Declaratory Relief (ECF No. 2), which was styled as a potential class action concerning the use excessive of force against "mentally ill" inmates housed in the segregation units at the Mount Olive Correctional Complex ("MOCC"). On September 6, 2013, the plaintiff was one of six MOCC inmates who attempted to file an Amended Complaint (ECF No. 6) adding additional parties and allegations concerning the use of excessive force on the segregation units at MOCC.

On October 28, 2013, plaintiff Lowe filed his first Motion for Preliminary Injunction (ECF No. 8) and a Memorandum of Law in support thereof (ECF No. 9), purportedly on behalf of himself and other similarly situated inmates, including the other five inmates who had signed the Amended Complaint.

However, on December 10, 2013, Lowe filed a Letter-Form Motion to Amend the Amended Complaint (ECF No. 11), in which he stated that he no longer wished to proceed with this matter as a class action, but requested that the court move forward on his Motion for Preliminary Injunction. Thus, on December 20, 2013, the undersigned entered an Order stating that *pro se* plaintiffs may not represent a class of individuals in a class action, s*ee Oxendine v. Williams*, 509 F.2d 1405 (4th Cir. 1975), but advising that each of the plaintiffs named in the Amended Complaint could file their own separate civil actions. (ECF No. 13). The December 20, 2013 Order also indicated that this civil action would go forward only with regard to allegations concerning plaintiff Lowe, granted Lowe's Motion to Amend the Amended Complaint and directed Lowe to file a "Second Amended Complaint" by January 21, 2014. (*Id.*)

On January 14, 2014, Lowe (hereinafter "the plaintiff") filed a Second Amended Complaint (ECF No. 16), a Renewed Motion for Preliminary Injunction (ECF No. 17) and a Memorandum of Law in support thereof (ECF No. 18). This matter is before the undersigned on initial screening pursuant to 28 U.S.C. § 1915A. Thus, service of process has not yet occurred.

## **STANDARD OF REVIEW**

Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The remainder of the rule addresses the procedure for a hearing on motions for a preliminary injunction and the scope of any such injunction. *Id.*

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[1], in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008). As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *

---

[1] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case. *See* 575 F.3d at 345-347.

> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. And all four requirements must be satisfied. *Id.* Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*

## ANALYSIS

Because the plaintiff's Renewed Motion for Preliminary Injunction (ECF No. 17) was filed after the plaintiff requested to have this civil action proceed only on his own

4

behalf, and because the Renewed Motion largely repeats the allegations contained in the initial Motion for Preliminary Injunction (ECF No. 8), the undersigned will focus on the allegations and arguments made in the Renewed Motion.

The plaintiff's Renewed Motion for Preliminary Injunction (ECF No. 17) is still phrased as though the plaintiff is pursuing a class action. First, the plaintiff contends that there is a reasonable likelihood that he will prevail on the merits because "[f]or the better part of the past decade, defendants have, and continue to, use excessive force, use chemical agents, grenades, and weaponry against mentally ill inmates who's [sic; whose] behavior is clearly consistent with symptoms of their mental illness. Tragically, the Plaintiff and inmates alike are unable to comply with orders, and cannot conform their actions to the requirements of institutional standards or rules." (ECF No. 8 at 1). The plaintiff further contends that, due to their mental health issues and the alleged acceptance of this conduct by the administration, these inmates are unable to properly address this allegedly unjustifiable punishment through the prison grievance system. (*Id.*)

The plaintiff's motion further asserts that Warden David Ballard has declared "Martial Law" on the Quilliams segregation units at MOCC, and has authorized correctional officers to use the subject methods of force whenever they wish. (*Id.* at 1). According to the plaintiff's motion:

> One guard said, "yeah technically we can spray you for just pissing us off" Corporal Hudson said, "We can spray you anytime we feel like it" (Exhibit 2) seconds before placing a hose/rod type instrument under his [another inmate's] door, nearly emptying an entire 16oz canister of phantom (a powerful chemical agent) directly in Douty's face, neck and entire body causing 1st degree burns on his skin. (Exhibits 3 & 4). Another guard claims that "if you refuse any order, we are allowed to spray you." One inmate filed a grievance because he was told by a Sgt. "that Paul Parry (AWS) said that we are going back to the old policies and if you even argue

> with us we are being told to shoot first and ask questions later." (Exhibit 4). This so called [Martial Law] is common knowledge amoungst [sic; amongst] guards, inmates and supervisors. The guards speak openly about their right to spray inmates for any reason that they fill [sic; feel] fit to. Unbelievably, not only do the guards openly admit that Q2 is under [martial law], they actually believe it, and are currently trying to enforce it. The guards even brag about how many inmates are being sprayed per week, and are competing to spray the most. One guard was heard bragging that he set a new record by spraying three (3) separate inmates in one day. It is speculated that roughly five (5) inmates per week are being sprayed with a chemical agent. It is an alarming fact that hundreds of inmates are being sprayed per year in the Quilliams Units at MOCC.

(*Id.* at 1-2).

The plaintiff further contends that correctional officers are currently and routinely using "chemical agents, grenades, riot control style guns, full range weaponry and full scale cell extractions" against inmates for minor rule infractions, and routinely using the maximum amount of force necessary to accomplish a goal (such as cell extraction) with "little to NO effort to temper, defuse or resolve the situation." (*Id.* at 2). The plaintiff further asserts that "most guards instigate, provoke and escalate the situation with one goal in mind, to spray the inmate, 'shoot first and ask questions later.'" (*Id.*) The plaintiff contends that this clearly demonstrates that the defendants are acting with deliberate indifference to a certain and substantial risk of serious harm, in violation of plaintiff's rights under the Eighth Amendment. (*Id.*)

The plaintiff further asserts that he and other inmates similarly situated face a substantial threat of irreparable harm if the injunction is not granted because he and other inmates "have suffered and continue to suffer serious physical injuries and severe psychological harm" and that "[a]ny remedy at law for plaintiffs' injuries would be inadequate." (*Id.*) The plaintiff further asserts that the threatened injury to him and other inmates far outweighs any harm the proposed injunction may cause defendants,

contending that the relief he seeks is an order compelling defendants to perform their pre-existing duties under state and federal law. He further asserts that "[t]he Fourth Circuit has recognized that use of excessive force, the unnecessary wanton infliction of pain, by officials who apply force maliciously and sadistically to cause harm, to punish contemporary standards of decency always are violated." (*Id.*) For these same reasons, the plaintiff asserts that "the public interest is well served by protecting the constitutional rights of all its members." (*Id.*)

The specific relief sought by the plaintiff is an Order requiring the defendants, their successors, agents, employers, and all persons acting in concert with them to: "regulate, restrict, or stop the use of excessive force, spraying inmates with an excessive amount of powerful chemical agents, using grenades and other crowd control riot type weaponry on inmates who are securely locked in a 6ft by 10ft enclosed, non-ventilated single man cell, who pose no threat to guards, other inmate[s] or themselves, and pose no threat to security." (*Id.* at 2). The plaintiff further requests that the court order defendants to "implement and develop, as soon as practical a plan to eliminate the substantial and certain risk of serious injury and severe psychological harm that Plaintiff and members of his class are sure to suffer due to Defendants routine practice of violating inmates['] constitutional rights." (*Id.*)

The plaintiff's Memorandum of Law in support of his Renewed Motion for Preliminary Injunction (ECF No. 18), which largely repeats the analysis contained in the motion document, was also not re-drafted to remove the class action language. However, the Memorandum of Law contains the following specific allegations concerning Lowe's circumstances at MOCC:

> Irreparable harm will result unless an injunction is granted in this case. As a result of the abuse and cruel and unusual punishment, use of excessive force, chemical agents, grenades, 37mm, 40mm shotguns, pepper ball guns and all other weaponry (considered collectively), plaintiffs have suffered and continue to suffer serious physical and psychological injuries. Plaintiff Lowe's first brutal attack, Oct. 2009, and assault left him permanently disabled and scared. See Case No. 2:09-cv-01528. Lowe has suffered extensive irreparable harm, not limited to, but most notable, Plaintiff suffered (6) grandma [sic; grand mal] seizures from head trauma, following the beating, and is left with a permanent disability (seizure disorder); (Exhibit-3). Plaintiff never had a seizure in his life. He now must take (Dilantin) twice a day to control his seizures. Please see (Exhibits 1 & 5) for documentation of the Oct. 09 beating and injuries.
>
> The most recent attempted murder/use of excessive force against Lowe has left him more physical injuries and left him afraid for his life. Plaintiff has suffered numerous 1st degree skin burns on his skin, eye puss, ear infections, still suffers from skin irritations (patches of red skin on his body), (Exhibits 13 & 14) serious injuries to his foot, suffers from severe psychological injuries, fears for his life every day and for good reason after the guards tried to kill him, by administering a **"lethal dose"** of (OC) chemical agent into his cell.
>
> Plaintiff's incidents and irreparable harm is as follows: Inmate Lowe (who suffers from a host of severe mental illness' [sic; illnesses] (Exhibit-6), suffered a severe mental breakdown on or about October 1st, 2012, after requesting help for months he covered his cell window after breakfast and told the officers he had nothing else to say unless mental health came to speak to him. The Capt. on duty then began a vicious unprecedented chemical attack against him using any and all weaponry at his disposal. Lowe was securely confined in a 6ft by 10ft single man unventilated cell, using (40) plus ounces of multiple powerful chemical agents, (2) grenades, and a shotgun, this attack lasted 45 min. Lowe was then cell extracted, taken to the rec yard assaulted again and placed in a restraint chair for (8) hours, all because he needed to see mental health. He was never decontaminated, nor was his cell (Exhibit-7); (also see plaintiff's orig. complaint.) Lowe was ultimately charged for obstructing. (Exhibit-8).

(ECF No. 18 at 2-3) [Emphasis in original].

The remainder of the plaintiff's Memorandum of Law describes incidents in which similar force was used against six other inmates. (*Id.* at 3-5). The Memorandum of Law further states:

> It will be proved to this court beyond a shadow of a doubt that there is simply no need to spray these inmates and in most all of these incidents there was [sic; were] NO efforts made to temper or resolve these incidents. There were numerous other options and alternatives available to these guards instead of using force, chemical agents and weaponry against inmates in order to make inmates comply with an order. It will also be proven to this court that guards are using force and spraying inmates with powerful chemical agents to "inflict pain" and to punish them. In short, the use of these [sic; this] riot type weaponry and the use of these powerful crowd control chemical agents being used on defenseless inmates who are locked in their single man cells who pose no threat to others, nor a threat to prison security [is] nothing short of corporal punishment.

(*Id.* at 5).

The plaintiff's Memorandum of Law further contends that the grievance process at MOCC "is broken" and does no good, and that the Warden and other supervisory officials have been "'put on notice' regarding the systematic pattern of guard brutality and abuse of inmates" and have failed to reasonably respond, if not tacitly authorized, the alleged abuse. (*Id.* at 6). The plaintiff contends that any remedy at law would be inadequate and that preliminary injunctive relief is appropriate because it is the only remedy for an ongoing constitutional violation. (*Id.*)

Although the defendants, once served with process, will be called upon to respond to the allegations in the plaintiff's Amended Complaint, the plaintiff's requests for preliminary injunctive relief are speculative at best. The plaintiff's Motion and Memorandum of Law largely discuss past events and the plaintiff has only asserted theoretical future injury. A mere possibility of additional harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21. Thus, at present, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims, or that he is likely to be irreparably harmed without preliminary injunctive relief. Accordingly, the undersigned proposes that the presiding District Judge **FIND**

9

that the plaintiff has not demonstrated the need for preliminary injunctive relief under the circumstances.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motions for Preliminary Injunction and/or Restraining Order (ECF Nos. 8 and 17).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Goodwin.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

<u>August 7, 2014</u>

Dwane L. Tinsley
United States Magistrate Judge