IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**KEITH W.R. LOWE,**

        **Plaintiff,**

v.                                         **Case No. 2:13-cv-22416**

**CAPTAIN RUSSELL MATHENEY,
LIEUTENANT BRIAN FERNANDEZ,
SERGEANT JEFFREY HILEWITZ,
OFFICER DOUG ELLIOT,
WARDEN DAVID BALLARD,
COMMISSIONER JAMES RUBENSTEIN,
KATHY DILLON, and MAJOR ROBERT RHODES,
each in his or her individual capacity,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion for Summary Judgment [ECF No. 55]. For the reasons stated below, the Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

I.    Factual and Procedural Background[1]

Around 7 a.m. on October 1, 2012, the plaintiff—an inmate at Mount Olive Correctional Complex who suffers from myriad mental health disorders—informed Officer Doug Elliot that he had been "asking for mental health for months" and "he was done asking or talking about anything and he would not speak another word

---

[1] The facts are set forth in the light most favorable to the plaintiff and as presented by the plaintiff.

until mental health came down to speak to him." Third Am. Compl. ¶ 27 [ECF No. 35]. After about twenty minutes with no response, the plaintiff "gave up hoping for help" and "covered his cell door window, and began to prepare for the attack that he knew was coming." *Id.* ¶ 28. When Sergeant Jeffery Hilewitz knocked on the door of his cell, the plaintiff responded he "needed mental health"; he offered no further response. Then the plaintiff began to hallucinate. He "began to frantically rip and tie numerous sheets all over his cell creating a web type contraption's [sic] to try and prevent them from getting him," and he "got back under his bunk and waited." *Id.* ¶ 29.

Because the plaintiff was not responsive, the defendant officers repeatedly deployed a chemical agent called Phantom into the plaintiff's cell, fired beanbag rounds from a shotgun into the plaintiff's cell, deployed an aerosol fogger with a mixture of pepper and tear gas (i.e., Aerko Clear Out) into the plaintiff's cell, and tossed multiple stingball grenades into the plaintiff's cell. The plaintiff did not respond despite the officers' use of "riot type style weapons." Pl.'s Suppl. Resp. 8 [ECF No. 111]. After using all of these chemicals and arms, the officers entered the plaintiff's cell, cuffed the plaintiff's hands behind his back, shackled the plaintiff's feet, and extracted the plaintiff from his cell.

After removing the plaintiff from his cell, the officers took the plaintiff to the recreation yard and placed the plaintiff into a mechanical restraint chair. According to the plaintiff, the officers inflicted additional injuries during this process. For example, the plaintiffs claims Lieutenant Brian Fernandez twisted and injured the

2

plaintiff's foot and ankle; the officers dropped the plaintiff on concrete; and Captain Russell Matheney elbowed, forearmed, and punched the plaintiff. Despite the prior use of chemical agents, the officers did not decontaminate the plaintiff.

Once the plaintiff was secured in the restraint chair, the officers wheeled the chair into the multi-purpose room, where the plaintiff remained restrained for eight hours.

These events provide the basis for the plaintiff's Third Amended Complaint. In his Third Amended Complaint, the plaintiff alleges claims of excessive force and of supervisory liability. Count One addresses the conduct leading up to the extraction of the plaintiff from his cell. Count Two addresses the conduct of defendants Matheney and Fernandez while moving the plaintiff from his cell to the recreation yard and placing him in a restraint chair. Count Three address the placement of the plaintiff in the restraint chair for eight hours. Count Four address the supervisory liability of defendants Matheney, Warden David Ballard, Major Robert Rhodes, Kathy Dillon, and Commissioner James Rubenstein.[2] The plaintiff seeks monetary damages, as well as various forms of declaratory and injunctive relief, including an order to transfer the plaintiff to another prison.

Subsequently, defendants moved for summary judgment. In their memorandum in support of this motion, defendants largely rely on a video documenting their efforts to extract, restrain, and detain the plaintiff on October 1, 2012. Defs.' Mot. for Summary Judgment Exhibit E [ECF No. 57].

---

[2] Defendants Matheney, Rhodes, Dillon, and Rubenstein moved to dismiss this count of the Third Amended Complaint. This issue is addressed in a separate memorandum opinion and order.

## II. Standard

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the court draws any permissible inferences from the facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. Discussion

The plaintiff alleges the defendants used excessive force when they used a collection of chemical agents and assorted arms in an attempt to extract the plaintiff from his cell, moved the plaintiff from his cell to the recreation yard, and left the plaintiff bound to a restraint chair for eight hours.

The Eighth Amendment prohibits cruel and unusual punishment and forbids the unnecessary and wanton infliction of pain. *E.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The analysis of an excessive force claims has two components: (1) "whether the prison official acted with a sufficiently culpable state of mind (subjective

component)" and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

"What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). In this case, the inquiry centers on the subjective component because, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated" regardless of whether the resulting injuries are significant. *Hudson*, 503 U.S. at 9. So the core judicial inquiry in an excessive force case is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320–21). Four factors guide this analysis: (1) "the need for application of force"; (2) "the relationship between that need and the amount of force used" (3) "the threat 'reasonably perceived by the responsible officials'"; and (4) "any efforts made to temper the severity of a forceful response." *Id.* at 7 (quoting *Whitley*, 475 at 321).

### A. Count One—Extraction from Cell

After receiving no response from the plaintiff, the defendants essentially emptied their armory in an effort to extract the plaintiff from his cell. They filled the cell with two chemical agents (i.e., Phantom and Aerko Clear Out); they fired beanbag rounds from a shotgun and tossed stingball grenades into the cell. The plaintiff

5

contends the use of these chemicals and arms was excessive. The video offered by the defendants corroborates the plaintiff's description of the raid on his cell.

Upon review of the *Whitley* factors, whether the defendants used excessive force remains a disputed question of fact. Essentially, when met with an unresponsive inmate, the defendants responded by clearing out their armory, using anti-riot measures on a single inmate in a small cell. I cannot—and I will not—declare as a matter of law that the use of such force is reasonably necessary to effect a cell extraction. Whether the use of chemical agents, beanbag shotgun rounds, and stingball grenades under the circumstances was malicious or sadistic is a question for the jury.

Accordingly, the defendants' Motion for Summary Judgment is **DENIED** as to Count One of the plaintiff's Third Amended Complaint.

### B. Count Two—Transfer to Recreation Yard

The plaintiff alleges that he was further subjected to the excessive use of force by defendants Matheney and Fernandez as he was being carried to the recreation yard and in the process of being placed in a restraint chair. However, the video submitted by the defendants wholly contradicts the plaintiff's allegations, warranting summary judgment. *See Scott*, 550 U.S. at 380 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him."). For example, despite the plaintiff's claim that defendant Matheny elbowed and punched him and that defendant Fernandez also used force, the video does not show that such events transpired. In light of the video, there is no genuine issue of material

fact concerning the conduct of defendants Matheney and Fernandez during the transfer to the recreation yard and his placement in the restraint chair.

Accordingly, the defendants' Motion for Summary Judgment is **GRANTED** as to Count Two of the plaintiff's Third Amended Complaint.

### C. Count Three—Confinement to Restraint Chair

Finally, the plaintiff challenges the constitutionality of placing him in a restraint chair for eight hours.

According to the plaintiff, prison policy directs that "restraints are used only in extreme circumstances" and further states that "[i]nstruments of restraint shall be used only as a precaution against escape during transfer, for medical reasons, by direction of a medical officer, or to prevent self-injury, injury to others, or property damage. . . . Restraints shall not be applied for more time than absolutely necessary." Pl.'s Suppl. Resp. 11 (emphasis omitted). The plaintiff claims this policy was violated in this case and is violated as a matter of course, as evidenced by an email from defendant Rhodes. *Id.* at 12; *see also* Compl. Exhibit 6, at 9 [ECF No. 35-1] ("[G]enerally speaking the inmate will be restrained in the chair in conjunction with needed uses of force.").

It is apparent from the video that the plaintiff was basically compliant once he was extracted from his cell and there is no evidence that he became non-compliant or resistant after that time. Nonetheless, the defendants placed the plaintiff in a restraint chair for a period of eight hours. Nothing in the record indicates why the defendants felt it was reasonably necessary to strap a compliant inmate into a

7

restraint chair. In my opinion, this fact is material and remains in dispute. Whether binding the plaintiff to a restraint chair for eight hours under the circumstances was malicious or sadistic remains a question for the jury.

Accordingly, the defendant's Motion for Summary Judgment is **DENIED** as to Count Three of the plaintiff's Third Amended Complaint.

## IV. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that the defendants' Motion for Summary Judgment [ECF No. 55] is **GRANTED** with respect to Count Two of the plaintiff's Third Amended Complaint, and **DENIED** with respect to Counts One and Three.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 30, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE